NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDOZ INC., <br><br> Plaintiff, <br><br> v. <br><br> SAM'S WEST, INC., <br><br> Defendant. | Civil Action No. 25-02001 (GC) (RLS) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Sam's West, Inc.'s Motion to Dismiss Plaintiff Sandoz Inc.'s Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 17.) Sandoz opposed, (ECF No. 22), and Sam's West, Inc. (Sam's Club) replied, (ECF No. 23). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**I.      BACKGROUND**

     **A.      Factual Background**

Sandoz is a pharmaceutical company that "develops, manufactures, and distributes medicines to wholesalers, pharmacies, hospitals, and other healthcare outlets."[1] (ECF No. 1 ¶ 17.)

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

Sam's Club, which is the name by which Sam's West, Inc. does business, operates pharmacies that sell generic medicines produced by Sandoz. (*Id.* ¶¶ 19, 20.)

In April 2013, Sandoz and Sam's Club entered into a Purchase Contract allowing Sam's Club to purchase pharmaceutical products from Sandoz at discounted prices. (*Id.* ¶¶ 2, 20 (citing ECF No. 1-2).) The Purchase Contract includes terms and conditions for the discounted pricing, as well as a list of agreed-upon products and pricing. (*Id.* ¶ 21; *see also* ECF No. 1-2 at 2-29.)[2] It also includes a dispute resolution procedure. (ECF No. 1 ¶ 28; *see also* ECF No. 1-2 at 7.) The parties signed a series of amendments to extend the Purchase Contract through April 2023. (ECF No. 1 ¶¶ 2, 22.)

From 2013 through most of 2018, Sandoz provided Sam's Club with pharmaceutical products pursuant to the Purchase Contract, and Sam's Club paid for those products without controversy. (*Id.* ¶ 30.) But from December 2018 to 2021, Sam's Club allegedly deducted $1,972,871.24 from payments it allegedly owed to Sandoz. (*Id.* ¶¶ 5, 31.) Sam's Club took the deductions for two reasons: first, because Sandoz "experienced supply issues," causing Sam's Club to purchase the products from another seller at a higher price (referred to as "Failure to Supply" or FTS), and second, because Sandoz lowered the price of the products included in the Purchase Contract after Sam's Club purchased those products from Sandoz (referred to as "Shelf-Stock Adjustments" or SSA). (*Id.* ¶ 6 (citing ECF No. 1-4 at 2).) During the period in which Sam's Club made these deductions, Sam's Club sent Sandoz spreadsheets listing how much it was withholding from Sandoz because of these issues. (*Id.* ¶ 32.)

---

[2]  Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Sandoz alleges it "repeatedly denied Sam's Club's claims," informed Sam's Club that the deductions were improper, and asserted that the Purchase Contract did not contain price adjustments for FTS or SSA. (*Id.* ¶ 7, 33-36, 44 (citing ECF No. 1-4 at 2, 5; ECF No. 1-5 at 2-3; ECF No. 1-7 at 2; ECF No. 1-8 at 2)). As an example, Sandoz alleges that on December 14, 2020, it "rejected" Sam's Club's FTS deductions, stating through email that credit amounts Sam's Club sought to deduct from its payments would be "denied" because Sam's Club was not "eligible" for FTS under their contract. (*Id.* ¶ 34 (citing ECF No. 1-5 at 3)). Sam's Club replied that "[t]he precedent is set" for it to receive credit for FTS claims because Sandoz has "historically . . . accepted and paid" those claims. (*Id.* ¶ 35 (citing ECF No. 1-5 at 3)). In response, Sandoz's representative wrote that they have "not issued any credit for Sam's FTS claims" since starting to work on the Sam's Club account in 2017 and reiterated that "Sam's is not eligible for FTS." (*Id.* ¶ 36 (citing ECF No. 1-5 at 2)). Sandoz alleges that Sam's Club then "conceded" that the deductions it sought were improper when it said the claims at issue would be "cancelled in full." (*Id.* ¶ 37 (citing ECF No. 1-5 at 2)).

Later, on April 21, 2021, Sandoz emailed Sam's Club "requesting payback" for deductions Sam's Club had claimed, stating that the claims were "denied in the past due to the lack of FTS language in the Sam's Club contract" and noting that "[t]hese and any future Sam's Club FTS claims will continue to be denied for the same reason." (*Id.* ¶ 38 (citing ECF No. 1-6 at 2)). That day, "Sandoz denied additional FTS and SSA [d]eductions" because the Purchase Contract "does not have any SSA and FTS language." (*Id.* ¶ 39 (citing ECF No. 1-4 at 5)). Sandoz alleges that Sam's Club claimed approximately 40 FTS and SSA deductions that the Purchase Contract does not permit and continues to knowingly, intentionally, and wrongfully withhold such payments now in a "continuing scheme to take improper deductions." (*Id.* ¶¶ 8-9, 42-43, 45, 56, 60.)

3

In 2023, the parties entered into a new contract. (*Id.* ¶ 46.) Unlike the original Purchase Contract, the 2023 contract contains provisions explicitly permitting deductions for FTS and SSA. (*Id.* ¶ 47.) Sandoz alleges Sam's Club "insisted" that the new agreement include these provisions. (*Id.*)

### B. Procedural Background

Sandoz filed a Complaint against Sam's Club on March 20, 2025.[3] (ECF No. 1.) The Complaint asserts one cause of action for breach of contract. (ECF No. 1 at 9-11.) On June 17, 2025, Sam's Club filed the instant Motion to Dismiss the Complaint. (ECF No. 17.) Sam's Club filed an opposition on July 11, 2025, and Sandoz filed its reply on July 18, 2025. (ECF Nos. 22, 23.)

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere

---

[3] This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

Sandoz brings one cause of action for breach of contract. In its Motion to Dismiss, Sam's Club argues (1) that it is "clear from the face of the [C]omplaint" that Sandoz's claims are time-barred; and (2) that the Complaint fails to state a claim upon which relief can be granted as to the alleged FTS deductions. (ECF No. 17-1 at 12, 14.) The Court considers each argument in turn.

### A. Statute of Limitations

The parties agree that, under New Jersey law,[4] a four-year statute of limitations applies to Sandoz's breach of contract claim. (*See* ECF No. 17-1 at 5 ("Sandoz's Complaint should be

---

[4] In diversity actions, "a federal court must apply the substantive laws of its forum state[.]" *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Substantive laws "include state statutes of limitations." *Id.* The parties do not dispute the application of New Jersey substantive law; both exclusively discuss and apply New Jersey law in their papers, and the Purchase Contract includes a choice-of-law provision stating that it "shall be construed in accordance with New Jersey law." (ECF No. 1-2 at 6.)

dismissed because it is barred by the four-year statute of limitations under New Jersey's Uniform Commercial Code[.]"); ECF No. 22 at 12 ("The statute of limitations applicable to Sandoz's breach of contract claim is four years." (citing N.J. Rev. Stat. 12A:2-725(1)).) And the "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."[5] N.J. Rev. Stat. § 12A:2-725(2). However, the statute of limitations may be subject to tolling. *Id.* § 12A:2-725(4).

Sam's Club argues that "any alleged breach [of contract]" that occurred prior to March 20, 2021—four years prior to when Sandoz filed its Complaint—is time-barred. (ECF No. 17-1 at 12-14.) It argues that the entire Complaint should be dismissed because exhibits attached to the Complaint show that the claims at issue "relate to purchases made, and amounts that would have become due, by no later than sometime in 2020." (*Id.* at 12.) It also argues that the continuing violation doctrine should not apply because the alleged breaches were "separate and independent" and apparent at the time they occurred. (*Id.* at 13-14.)

In response, Sandoz argues that the statute of limitations should not bar its claims because Sam's Club engaged in a "years-long continuous scheme to improperly withhold payment owed to Sandoz," and where "'any act integral to the scheme' occurs within the limitations period, 'it is not time-barred.'" (ECF No. 22 at 13 (quoting *United States v. Daugerdas*, 2011 WL 666170, at *2 (S.D.N.Y. Feb. 7, 2011)).) Sandoz argues that all claims are part of the alleged continuous scheme—including the ones that occurred outside of the limitations period—and should survive the Motion to Dismiss. (*Id.* at 13-14.) It also argues that "at a minimum," the Complaint should

---

[5]  Under New Jersey law, "'[a]ccrual' is a technical term found in statutes of limitation to denote the date on which the statutory clock begins to run." *Ali v. Rutgers*, 765 A.2d 714, 717 (N.J. 2000).

6

proceed on alleged breaches that occurred after March 20, 2021, noting that the Exhibits attached to the Complaint are only "examples" of breaches and are not exhaustive. (*Id.* at 12-14.)

While a statute of limitations must technically be pled as an affirmative defense in the answer, the Third Circuit, "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6)," but "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation modified). Accordingly, "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Schmidt*, 770 F.3d at 249 (citation modified).

Looking to Sandoz's Complaint, Sandoz alleges that "[b]etween 2018 and 2021, in breach of the plain terms of the [Purchase Contract], Sam's Club unilaterally and improperly deducted $1,972,871.24 from payments owed to Sandoz." (ECF No. 1 ¶ 5.) Further, it alleges that "[i]n December 2018, Sam's Club began unilaterally withholding money from Sandoz for [p]roducts that it purchased, claiming it was entitled to deductions because of Sandoz's 'failure to supply' or 'shelf stock adjustments.' Over the next three years, Sam's Club sent Sandoz spreadsheets with amounts that it was withholding from Sandoz, claiming these were 'FTS' and 'SSA' deductions. Sandoz repeatedly disputed Sam's Club's [d]eductions, stating that such deductions were not permitted under the [Purchase Contract]." (*Id.* ¶¶ 31-33.) As such, Sandoz's own allegations state that it was aware of Sam's Club's deductions, which it alleges "were not permitted." Therefore, "unless some basis for tolling applies," Plaintiff's action is untimely to the extent that it seeks relief for the time period prior to March 20, 2021.[6] *Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*,

---

[6] Sam's Club argues that the Exhibits attached to the Complaint indicate that the entire period for which Sandoz seeks relief is time-barred, as the deductions referenced in the Exhibits occur prior to March 20, 2021. However, the Court agrees with Sandoz that the Exhibits are

706 F. Supp. 3d 489, 512 (D.N.J. 2023) (citation omitted); *see Cambridge Mobile Telmatics, Inc. v. Sfara, Inc.*, Civ. No. 23-1368, 2024 WL 3879087, at *4 n.2 (D.N.J. Aug. 20, 2024) (finding breach of contract claim time-barred after "simply reviewing [the counterclaimant's] own allegations"); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999) ("If the complaint's allegations, taken as true, allege facts sufficient to toll the statute of limitations, it must survive a motion to dismiss.").

Plaintiff seeks to invoke the continuing violation doctrine to toll the statute of limitations. The continuing violation doctrine "developed as an equitable exception to the statute of limitations." *Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010) (quoting *Bolinger v. Bell Atl.*, 749 A.2d 857, 860 (N.J. Super. Ct. App. Div. 2000)). This doctrine has primarily been applied by federal and state courts in the discrimination context. *See Hall v. St. Joseph's Hosp.*, 777 A.2d 1002, 1010 (N.J. Super. Ct. App. Div. 2001); *see also Wilson v. Wal-Mart Stores*, 729 A.2d 1006, 1010-11 (N.J. 1999) (applying continuing violation doctrine to alleged tortious conduct); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) ("[V]irtually all of the precedent discussing the continuing violation doctrine involves workplace discrimination suits."). In that context, the doctrine "was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination." *Roa*, 985 A.2d at 1233. Accordingly, "[t]he premise underlying the [continuing violation] doctrine is that the conduct becomes actionable because of its 'continuous, cumulative, synergistic nature.'" *Id.* at 1231 (quoting *Wilson*, 729 A.2d at 1011). Indeed, "individually

---

provided as examples and are not meant to represent the full scope of deductions at issue. Sandoz uses the terms "[f]or example" and "e.g." to set off its discussion of and citation to these emails, communicating that they are intended only as examples. (*See* ECF No. 1 ¶¶ 6-7, 33-34.) Moreover, the Complaint clearly states that the deductions at issue occurred as late as November 2021. (*See id.* ¶ 56.)

actionable allegations cannot be aggregated." *Id.* at 1232 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)); *cf. Mattiaccio v. Scharfenberg*, Civ. No. 23-23037, 2025 WL 1879226, at *2, *11 (D.N.J. July 8, 2025) (declining to apply continuing violation doctrine where Plaintiffs "allege[d] a series of discrete acts which, by themselves, each constitute a separate actionable claim" under 42 U.S.C. § 1983).

The Court finds that the continuing violation doctrine does not toll Sandoz's breach of contract claim for acts preceding March 20, 2021. Sandoz's claim, as pled in its Complaint, is based on "approximately 40 Deductions based on FTS and/or SSA price adjustments that were not permitted under the [Purchase Contract]." (ECF No. 1 ¶ 43.) And in its briefing, Sandoz states that it "alleges that Sam's Club violated the [Purchase Contract] more than 40 times." (ECF No. 22 at 13.) The Court construes Sandoz's allegations and the deductions at issue as separate and discrete violations of the Purchase Contract, rather than a continuing or "cumulative" violation as argued by Sandoz. (ECF No. 22 at 13.) *See also Wilson*, 729 A.2d at 1011. And "individually actionable allegations cannot be aggregated" under the continuing violation doctrine. *Roa*, 985 A.2d at 1232.

Indeed, in *Stark v. Maraventano*, the Superior Court of New Jersey, Appellate Division, affirmed the trial court's decision not to extend the continuing violation doctrine to contract-based claims where an agreement was consistently breached for eight years. No. A-4801-18, 2021 WL 4898501, at *7 (N.J. Super. Ct. App. Div. Oct. 21, 2021). It concluded that even though the defendant was "consistent" in violating its agreement with plaintiff, that "[did] not mean plaintiff's claim for breach of contract accrued each year." *Id.* Similarly, here, Sandoz alleges that Sam's Club consistently violated the Purchase Contract from 2018 through 2021. As such, *Stark* instructs

9

that this Court should not extend the continuing violation doctrine to Sandoz's breach of contract claim.

Moreover, Sandoz does not point to any case that applies New Jersey law in a way favorable to its position. Instead, Sandoz relies on *United States v. Daugerdas*, an out-of-circuit criminal case interpreting a federal statute of limitations. Sandoz cites this case for the proposition that allegations of a "single continuous scheme" are "not time-barred" as long as "any act integral to the scheme" occurs within the limitations period. (ECF No. 22 at 13.) But the facts in *Daugerdas* involve "a Corrupt Endeavor to Obstruct and Impede the Internal Revenue Laws," rather than a civil breach of contract claim. *Daugerdas*, 2011 WL 666170, at *1. The Court is not persuaded by the *Daugerdas* case. Taken together, the Court declines to apply the continuing violation doctrine to Sandoz's breach of contract claim.[7] *See Deluxe Sales & Service, Inc. v. Hyundai Eng. & Const. Co., Ltd.*, 603 A.2d 552, 557 (N.J. Sup. Ct. App. Div. 1992) (finding the statute of limitations had run where "[a]side from several brief exchanges, in which Deluxe vacillated respecting the number of invoices that remained unpaid, Deluxe did little or nothing to press its claim until November 15, 1989, at which time the statute had run as to the remaining invoices"). As such, the Court dismisses Sandoz's breach of contract claim with prejudice to the

---

[7]   Sandoz's briefing argues that "[w]here a contract has 'divisible, installment-type payment requirements, . . . a new cause of action arises from the date each payment is missed or an underpayment occurs.'" (ECF No. 22 at 14 (citing *Angelo v. Fidelity & Guar. Life Ins. Co.*, No. 18-3224, 2019 WL 330521, at *2 (D.N.J. Jan. 25, 2019)).) As such, Sandoz seems to concede that the payments at issue are distinct and that each disputed deduction created "a new cause of action." *Id.* Moreover, when the New Jersey Supreme Court interpreted an installment contract to evaluate a breach of contract claim, it found that the statute of limitations runs against each installment "*as it falls due.*" *Metromedia Co. v. Hartz Mtn. Assocs.*, 655 A.2d 1379, 1381 (N.J. 1995) (emphasis added) (citation omitted). It found that the plaintiff was entitled to recover only for installments due within six years of when the suit was filed (per the statute of limitations applicable for breaches of contract not related to the sale of goods), and it barred older claims. *Id.* As such, insofar as Sandoz analogizes the breach to installment contracts, its claims from before March 20, 2021, are similarly barred.

extent it seeks to recover for alleged violations of the Purchase Contract that occurred outside of the applicable four-year statute of limitations, or before March 20, 2021.[8]

### B.      Failure to State a Claim

Sam's Club next argues that the Complaint must be dismissed because it did not breach the contract, as the Purchase Contract "does not preclude Sam's Club from taking FTS deductions resulting from Sandoz's failure to supply."[9]  (ECF No. 17-1 at 15; *see also id.* at 9.)  Because the Purchase Contract does not preclude deductions or otherwise contain "contrary terms," it argues, the Uniform Commercial Code (UCC) as adopted in New Jersey applies and permits such deductions.[10]  (*Id.* at 15.)  Indeed, Sam's Club asks the Court to read multiple provisions of the UCC into the Purchase Contract including: (1) Section 12A:2-711(1), which allows for cover "[w]here the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance" and refers to such a situation as "breach," N.J. Rev. Stat. § 12A:2-711(1); (2) Section 12A:2-712(1), which provides that "[a]fter a breach within the preceding section the buyer

---

[8]      The Court also notes that the equities do not favor tolling the statute of limitations.  Not only is Sandoz a sophisticated entity, but it was aware of the alleged breaches, as it avers to receiving "spreadsheets with amounts [Sam's Club] was withholding" during the time period at issue.  (ECF No. 1 ¶ 32.)  Despite possessing such spreadsheets, Sandoz chose not to pursue a claim.  Moreover, Sandoz entered into a new contract with Sam's Club in 2023 that was explicit about the rights at issue in this dispute.  (*Id.* ¶¶ 46-47.)  However, Sandoz still waited nearly 18 months from when that contract was signed to file the instant Complaint for breach of contract. And since "[a] statute of limitations may be equitably tolled under very limited circumstances," the Court finds that the aforementioned circumstances do not demand such relief.  *Barron v. Gersten*, 277 A.3d 502, 504 (N.J. Super. Ct. App. Div. 2022).

[9]      Sam's Club's arguments regarding failure to state a claim upon which relief can be granted pertain exclusively to its FTS deductions.  It includes a footnote purporting to preserve "its right to argue that the SSA deductions were likewise permissible under the Purchase Contract."  (ECF No. 17-1 at 15 n.4.)

[10]     The Uniform Commercial Code (UCC) as adopted in New Jersey is available at N.J. Rev. Stat. § 12A:2–101, *et. seq.*

may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller," N.J. Rev. Stat. § 12A:2-712(1); (3) Section 12A:2-712(2), which provides that the buyer "may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages," N.J. Rev. Stat. § 12A:2-712(2); and finally (4) Section 12A:2-717, which provides that upon notification to the seller, a buyer can "deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract," N.J. Rev. Stat. § 12A:2-717. (*See* ECF No. 17-1 at 15-16.) Sam's Club also adds that the Purchase Contract itself contemplates a "deduction or set off" in the dispute resolution provision. (*Id.* at 17-18.) Finally, it contends that because it properly complied with the dispute resolution provision prior to taking any deductions, it did not breach the agreement. (*Id.* at 17; ECF No. 23 at 13-14; *see also* ECF No. 1-2 at 7.)

In response, Sandoz argues that it could not have triggered the UCC provisions permitting deductions for a failure to supply because it "had no supply obligations"—and Sam's Club had no purchase obligations—under the Purchase Contract. (ECF No. 22 at 8, 15-17 (citing ECF No. 1-2).) Rather, the Purchase Contract merely established "discounted prices that Sam's Club agreed to pay Sandoz if it purchased any of the products" listed in Exhibit A of the agreement. (*Id.* at 16.) Sandoz also argues that the dispute resolution provision contemplated the deductions by contending that it is "simply and only, a dispute resolution provision" that "does not give Defendant the right to unilaterally deduct payment for FTS." (*Id.* at 19.)

Under New Jersey law, a plaintiff must allege four elements to state a breach of contract claim: (1) a valid contract between the parties; (2) performance by the plaintiff; (3) lack of performance by the defendant, or breach of contract; and (4) damages. *Globe Motor Co. v. Igdalev*,

139 A.3d 57, 64 (N.J. 2016). When determining whether a breach has been adequately alleged, the Court may dismiss the Complaint if the contract in question "unambiguously contradicts or fails to support the plaintiff's allegations of breach." *Burns v. TD Bank, N.A.*, Civ. No. 21-18194, 2022 WL 17547258, at *5 (D.N.J. Dec. 8, 2022); *see also Abramson v. Affinity Fed. Credit Union*, Civ. No. 20-13104, 2021 WL 3885325, at *5 (D.N.J. Aug. 31, 2021) ("[T]he Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach."); *Yerkes v. Cessna Aircraft Co.*, Civ. No. 14-5925, 2015 WL 3903569, at *7 (D.N.J. June 25, 2015) (dismissing alleged breach of contract for this reason). "Generally, questions of contract interpretation should not be decided without the benefit of discovery and a full evidentiary record." *Atlas Commc'ns Tech., Inc. v. DXC Tech. Servs.*, Civ. No. 19-19033, 2020 WL 5105197, at *4 (D.N.J. Aug. 31, 2020).

Sam's Club's argument that the UCC provisions purportedly allowed its deductions is premature. (ECF No. 17-1 at 15.) The Purchase Contract does not contain any provisions plainly discussing the application of deductions. It states that it "sets forth the entire agreement" between Sandoz and Sam's Club and that it "may be modified only by a written agreement." (ECF No. 1-2 at 6.) The only reference to a deduction is within the dispute resolution provision: "Customer shall not make any deduction or set off against amounts owed to [Sandoz] without first following the dispute resolution procedures set forth above."[11] (*Id.* at 7.) While this provision provides a mechanism in which deductions may be permitted, it is not yet clear that the provision applies or that Sam's Club complied with the dispute resolution procedures. Sam's Club's argument is better

---

[11]   The dispute resolution procedures included providing written notice of the dispute, after which the parties had 60 days to seek resolution. (*See* ECF No. 1-2 at 7.) If the parties could not resolve the dispute after 60 days, each party was permitted to "pursue whatever rights and remedies it has under this Purchase Contract and applicable law." (*Id.*)

13

suited for summary judgment. Therefore, the Purchase Contract does not "unambiguously contradict" Sandoz's allegations to warrant dismissal. *See Buchmiller v. Suntuity Solar, LLC*, Civ. No. 21-20412, 2022 WL 3908070, at *3 (D.N.J. Aug. 30, 2022) (declining to grant a motion to dismiss where, as a preliminary ruling, the court concluded that a contract provision warranted additional factfinding); *Klein v. Budget Rent a Car Sys., Inc.*, Civ. No. 12-7300, 2013 WL 1760557, at *6 (D.N.J. Apr. 24, 2013) (declining to dismiss the plaintiffs' breach of contract claim because "ambiguous contractual provisions raise questions of fact that are not appropriately decided on a motion to dismiss").

Next, for this Court to rely on the UCC provisions cited by Sam's Club, the Court must find that the Purchase Contract: (1) required Sandoz to supply goods to Sam's Club, and (2) that Sandoz breached the Purchase Contract. For example, Section 12A:2-712(1) provides that "*[a]fter a breach* within the preceding section the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." N.J. Rev. Stat. § 12A:2-712(1) (emphasis added). The Court notes at the outset that Sam's Club does not identify any provision in the Purchase Contract that obligated Sandoz to provide product, as opposed to obligating it to provide discounted pricing on purchases made by Sam's Club. Indeed, Sandoz argues that it had no such supply obligation (and that Sam's Club had no purchase obligation). (ECF No. 22 at 8, 16-17.) Discovery will shed light on the extent of any breach.

Because at this early stage the Purchase Contract attached to the Complaint does not "unambiguously contradict" or otherwise fail to support Sandoz's allegations that Sam's Club breached the Purchase Contract when it took deductions for FTS, the Court declines to grant Sam's Club's Motion to Dismiss for failure to state a claim.

## IV.   CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 17) is **GRANTED in part** and **DENIED in part**.  An appropriate Order follows.

Dated: January 26, 2026

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**